UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


JOAN CLAIRMONT,                 )
            Plaintiff           )
                                )
                                )
            v.                  ) C.A. NO. 11-cv-30188-MAP
                                )
TARGET CORPORATION,             )
            Defendant           )


MEMORANDUM AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
(Dkt. No. 13)

December 13, 2012

PONSOR, U.S.D.J.

I. INTRODUCTION

In this diversity action, Plaintiff Joan Clairmont

("Clairmont") has filed a one-count complaint charging

Defendant Target Corporation with negligence.  On July 2,

2009, Plaintiff fell while walking through Defendant's

store, and she alleges that Defendant failed to use

reasonable care in the maintenance, repair, care, control,

and inspection of the area of the floor where her fall

occurred.  Defendant has filed a Motion for Summary Judgment

(Dkt. No. 13); for the reasons set forth below, the court

will allow it.

## II. BACKGROUND

Plaintiff Joan Clairmont resided in Pittsfield, Massachusetts, from June through October every year. On July 2, 2009, Plaintiff and her husband, Robert Clairmont ("Robert"), went to the Lanesboro Mall for dinner and a movie. Robert dropped Plaintiff off at the street entrance to the Target store and went to park the car. Plaintiff and her husband planned to meet at Subway before the movie. Plaintiff went to the concession stand in Target and bought a soda and popcorn. She then began walking through the store on her way to meet her husband. Plaintiff was wearing "Crocs-style shoes" at the time. (Dkt. No. 13-2, Ex. A Clairmont Dep. 15, 32.)

According to Plaintiff, she was walking down the main aisle of the store, called the "racetrack," at a regular pace, holding her popcorn in one hand and her soda in the other. Plaintiff alleges that "[s]uddenly [she] was propelled with great force by a change in the surface" and fell. (Dkt. No. 13-2, Ex. A Clairmont Dep. 19.) As she tumbled, her soda and popcorn "spilled all over." A few

people stopped to help her, but Plaintiff does not know their identities.

At the time of Plaintiff's fall, Jennifer Darby ("Darby") was the pharmacist on duty at Target.  Darby did not see Plaintiff fall, but a customer came to the pharmacy and said that someone had fallen and needed help.  Darby left the pharmacy and called the "Leader on Duty" ("LOD"), Fred Warren ("Warren").  As the first Target employee to arrive at the scene, Darby saw Plaintiff sitting on the floor with two or three people standing around her.  Darby observed popcorn and a drink spilled on the floor. Plaintiff told Darby that she fell, but she did not say what caused her fall.  Darby did not notice anything unusual about the area of the floor where Plaintiff fell, and she left the scene after one or two minutes.  (Dkt. No. 13-6, Ex. E Darby Dep.)

Shortly after Darby arrived, David Mackie ("Mackie") got there as well.  At the time of Plaintiff's accident, Mackie, who had been employed by Target since 2005, was one of the store's team leaders.  His duties included making sure that the sales floor was free of clutter.  Mackie was

walking on the racetrack when he saw a group of people standing around a woman on the floor.  He noticed soda and popcorn on the floor and asked Plaintiff if the debris caused her fall.  Plaintiff told him that the popcorn and soda did not cause her fall and that she was carrying them at the time she fell.  Plaintiff did not tell Mackie what caused her fall.

Warren arrived at the scene after receiving a walkie-talkie communication from Darby indicating that there was a guest incident in the main racetrack between aisles A and B. When he first saw Plaintiff, she was sitting on the floor on the side of the aisle.

At about the time that Warren arrived, Robert, Plaintiff's husband, also came to the scene after a passerby had located him at the Subway store.  Robert, who had obviously not seen the accident, asked Plaintiff what caused her fall.  According to Mackie, who was present during this exchange, Plaintiff told her husband that she had fallen over her own two feet.  Robert and Warren then helped Plaintiff up and brought her to a bench.

Warren asked Plaintiff to fill out a "Guest Incident

Report."  He wrote down the information as Plaintiff imparted it to him orally, and then Plaintiff signed her name to the document.  The report indicated that Plaintiff was walking down the main racetrack between aisles A and B at 6:45 p.m. when one of her Croc shoes caught on a floor tile causing her to fall.  According to Warren, Plaintiff initially told him, as she had told her husband, that she "had tripped over her own two feet."  (Dkt. No. 13-4, Ex. C Warren Dep. 38-39.)  As they talked more, however, Warren said that Plaintiff then told him that her Croc shoe must have caught on the floor.  At his deposition, Plaintiff's husband Robert testified that Plaintiff did not tell Warren what caused her fall in his (Robert's) presence.  According to Robert, Clairmont told him that she "tripped on the floor tiles." (Dkt. No. 13-3, Ex. B Robert Dep. 20.)

At her deposition, Plaintiff did not say that her shoe caught on a tile, but rather that she was propelled forward with sudden force by a change in the surface of the floor "like an unevenness of the floor tiling."  In fact, when Plaintiff was quoted the Guest Incident Report language about her shoe catching on the floor tile, she did not

recall using those words and insisted that she told Warren

that she had been propelled forward.   Plaintiff also

testified that she did not see anything on the floor prior

to her fall and that she did not have any trouble seeing.

Initially, Plaintiff stated that she did not observe the

floor after she fell or what caused her fall.   However, she

later stated that she "glanced" at the floor while lying in

the aisle.   When asked about the unevenness, Plaintiff

stated that she did not know how large the irregularity was,

never measured it, and never felt it with her hands.   When

asked whether she looked around on the floor to ascertain

what caused her to fall, Plaintiff said she did not.

Plaintiff admitted she did not tell anyone at Target about

any unevenness of the floor.   (Dkt. No. 13-2, Ex. A

Clairmont Dep. 43-43, 72-73.)

At approximately 7:30 p.m. -- about 45 minutes after

the incident -- Warren took three photographs of the area

where Plaintiff fell.   According to Warren, the photographs

accurately reflected the condition of the main racetrack

where Plaintiff fell after the popcorn and soda had been

removed.   (Dkt. No. 13-8, Ex. G Warren Photographs.)   Warren

was not aware of any other customers falling in the same area as Plaintiff either before or after the incident. Mackie testified that he walked by the area where Plaintiff fell approximately fifteen minutes prior to the incident and did not notice anything unusual about the floor.

A few weeks after Plaintiff's accident, Robert went alone to the Target store and attempted to take photographs of the location where he believed his wife fell. (Dkt. No. 13-10, Ex. I Clairmont Photographs.) Robert testified that he did not run his hand over the surface of the floor either before or after taking the photographs. He also did not take any measurements to determine if there was any significant, quantifiable irregularity in the floor surface. According to Plaintiff, the photographs taken by Robert best depict the area where she fell.

Target had previously done work on some floor tiles in the general area. Approximately two weeks prior to Plaintiff's accident, store employees noticed that there were cracks running through some floor tiles. Donald Pelkey ("Pelkey"), the maintenance manager, was notified of the problem. On June 18 and 19, 2009, approximately two weeks

prior to Plaintiff's fall, Pelkey replaced some floor tiles
with matching tiles that were in storage.  Pelkey testified
about the process of replacing the tiles including the
techniques he used to ensure the tiles were level. Pelkey
testified that the tiles were level after he finished the
job.

Cindy Cail ("Cail") was Target's District Facilities
Manager and Pelkey's boss.  On June 25, 2009, Cail visited
and inspected the Target store.  In her report, Cail noted,
"Great job replacing tiles.  Looks very nice."  (Dkt. No.
13-12, Ex. K Cail Report.)  Pelkey was not aware of anyone
tripping over the tiles he replaced at any point after June
2009.  He was also not aware of anyone's feet sticking to
either the new or old tiles during that same period.

When shown the photographs taken by Robert of the floor
tiles, Pelkey stated that the pictures accurately depicted
the floor area where he replaced the tiles.  Pelkey
testified that the new tiles were lighter in color than the
old tiles.  According to Warren and Mackie, Plaintiff did
not fall in the area of these replaced tiles.

On June 2, 2012, Plaintiff filed her complaint against Target alleging negligence in "the maintenance, repair, care, control and inspection of the floor" where she fell and a failure "to give adequate and effective warnings and instructions" to her.  (Dkt. No. 1, Compl. ¶ 11.)  Following discovery, Target filed the present Motion for Summary Judgment.

### III. <u>DISCUSSION</u>

Defendant argues that summary judgment is appropriate because Plaintiff has failed to establish that Target breached its duty of care to Joan Clairmont.  Defendant argues that Plaintiff has failed to meet her burden of establishing material issues as to two essential elements of her claim: the existence of a defect and prior notice of the defect to the Defendant.  During oral argument, it emerged that, in addition, the record may not support any claim by Plaintiff that she actually fell in the area of the replaced tiles.

A. <u>Summary Judgment Standard</u>.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on

file, together with the affidavits, if any, show that there

is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(c).  "A genuine issue exists when, based

on the evidence, a reasonable jury could resolve the issue

in favor of the nonmoving party.  Further, a fact is

material if it has the 'potential to affect the outcome of

the suit.'" Napier v. F.V DEESIE, Inc., 454 F.3d 61, 66 (1st

Cir. 2006) (internal citation omitted).

The moving party, in this instance Target, bears the

initial burden of averring that there is no genuine issue as

to a dispositive material fact and that it is therefore

entitled to judgment.  After this, the nonmoving party, here

Plaintiff, must point to evidence of record sufficient to

establish the existence of a material issue on the

"essential element[s] of her case with respect to which she

has the burden of proof."  Celotex Corp. v. Catrett, 477

U.S. 317, 323 (1986).  A plaintiff cannot rely on "mere

allegations of evidence that is less than significantly

probable. . . .  Summary judgment likely will be

appropriate if the nonmovant elects to rest upon some

combination of conclusory allegations, improbable inferences, and unsupported speculation."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994) (internal citation omitted).

In evaluating a summary judgment motion, the court must "examine the record in the light most flattering to the nonmovant and indulge all reasonable inferences in that party's favor."  Cadle Co. v. Hayes, 116 F.3d 957, 959 (1st Cir. 1997).  The role of the judge at the summary judgment stage is limited.  "Credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (2005).

B. Negligence.

In all negligence actions under Massachusetts law, the plaintiff must demonstrate: "(1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury."  Jorgensen v. Massachusetts Port Authority, 905 F.2d 515, 522 (1st Cir. 1990).  A property owner owes a duty to all lawful visitors to use reasonable care to maintain its property in

reasonably safe condition "in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden of avoiding the risk."  Sheehan v. Roche Bros. Supermarkets, 448 Mass. 780, 783-84 (2007).  If the property owner does not maintain its premises in a reasonably safe condition, then he must "warn [patrons] of any dangers that might arise from [patron] use, which are not likely to be known to them, and of which the defendant knows or ought to know."  Oliveri v. Massachusetts Bay Transportation Authority, 363 Mass. 165, 167 (1973).

A property owner must have actual or constructive knowledge of the dangerous condition and sufficient time to remedy the condition for liability to attach.  See, e.g., Richardson v. Star Market Co., 356 Mass. 731 (1969); Allen v. Albert Zallen Co., 340 Mass. 785 (1960); but see Sheehan, 448 Mass. at 790 (holding that if a plaintiff demonstrates that an unsafe condition was reasonably foreseeable because of the owner's mode of operation, then she will satisfy the notice requirement).

1. Location of the Fall.

A review of the record offers no assistance, beyond
conjecture, as to precisely where in the store Plaintiff's
fall occurred.  Defendant concedes that the record does
support the conclusion that, about two weeks earlier, some
tiles had been replaced somewhere in the general area of the
accident.  However, the evidence of record leaves this
court, and would leave any ultimate jury, to bare
speculation as to a possible correspondence between the site
of the fall and the site of the floor repair.

Plaintiff testified that she moved to the side of the
aisle after falling.  It is therefore clear that the
location where Target employees found her was not exactly
where the fall took place.  Plaintiff did not accompany her
husband back to Target to take photographs of the location
of the fall.  At her deposition, Plaintiff testified that
she fell "somewhere" in the area where her husband took the
pictures but that it was "kind of hard" to tell from the
photographs. (Dkt. No. 13-2, Ex. A Clairmont Dep. 79-80.)[1]

---

[1]Plaintiff also testified that she believed that she
accompanied her husband when he took the photographs.  (Dkt.
No. 13-2, Ex. A Clairmont Dep. 41, 81.)  However, Robert
testified at his deposition that he went alone to take the
photographs.  (Dkt. No. 13-3, Ex. B. Robert Dep. 25.)  At

In contrast, Defendant has offered the testimony of two Target employees who were on the scene at the time and who stated that, wherever Clairmont may have fallen, she did not fall in the area of the replaced tiles.  Viewing the evidence of record with as much generosity as possible toward Plaintiff, there is simply nothing concrete to suggest that the fall occurred where the tiles were replaced.

2. **Existence of a Defect**.

Of course, the absence of evidence that might persuade a jury that the fall occurred where the tiles were replaced would not necessarily be fatal to Plaintiff's claim, if the record contained evidence of some other defect, perhaps caused by something other than the new tiles.  This would be a hard argument, since Plaintiff appears to rely on a "replacement tile" theory, but it is not hypothetically impossible.  Unfortunately for Plaintiff, no evidence appears in the record, beyond Plaintiff's own conclusory

---

oral argument, Plaintiff's counsel also asserted that Robert alone had gone to take the photographs.

offering, suggesting that there was <u>any</u> defect in the tiles

where she fell, whether replaced or unreplaced.

It is true that in her complaint, Plaintiff offered the

allegation that "a section of the floor in the area of the

main racetrack between A and B was uneven and not level and

represented a tripping hazard and the condition had been

present for an extended period of time."  (Dkt. No. 1,

Compl. ¶ 5.)

Now, at the summary judgment stage, however, Plaintiff

can offer as evidence of this allegedly unsafe condition

only her own general testimony and the entirely unhelpful

photographs taken by her husband several weeks after the

incident.  In the Guest Incident Report that Plaintiff

signed, Target employee Warren recited Plaintiff's claim

that the fall was caused when her "Crok [sic] caught on

floor tile, causing Mrs. Clairmont to fall to floor and

strike side, shoulder and head on tiled floor." (Dkt. No.

13-7, Ex. F Guest Incident Report.)  At her deposition,

Plaintiff stated that "[s]uddenly [she] was propelled with

great force by a change in the surface."  (Dkt. 13-2, Ex. A

Clairmont Dep. 19.)

Plaintiff has not offered any evidence beyond her own recollection of the fall that supports the existence of a defect at the time.  At deposition, Plaintiff testified that she did not actually observe a change in the surface of the floor either before or after the fall.  Later, she testified that she "glanced" at the floor to notice the unevenness. (Dkt. No. 13-2, Ex. A Clairmont Dep. 42-43, 74.)  Both Plaintiff and her husband testified that they did not run their hands over the location of the fall, or over the new tiles, to determine if any unevenness existed, either at the time of the fall or when the pictures were taken.  No evidence throws any light on either the extent or the degree of any supposed irregularity in the floor.  The photographs taken by Plaintiff's husband do not depict any unevenness in the floor whatsoever, but only a difference in the color of the tiles. (Dkt. No. 13-10, Ex. I Clairmont Photographs.) They offer no assistance to Plaintiff.

The law is well established that Plaintiff's own general conjecture regarding a possible defect is not by itself enough to justify jury assessment of her claim.  See Miyasha v. Harvard Vanguard Assoc., Inc., 2012 WL 1088472

(Mass. Super. Feb. 13, 2012) (granting summary judgment and finding that the plaintiff's accusations of bumpy rug did not establish either a negligent defect or notice); Esposito v. Winn Mgmt. Corp., 1998 Mass. App. Div. 145 (1998) (holding that dismissal was proper where the plaintiff's testimony and photographs were insufficient to establish that a defect existed).

The issue of possible negligence becomes a question of fact for the jury only where record evidence might support an argument that a defendant has failed to use reasonable care.  In this factual landscape a jury could then weigh whether a defect, Plaintiff's own clumsiness, or the spilled popcorn and soda proximately caused the fall.  Beyond Plaintiff's say-so, however, this record lacks evidence of any defect in the premises proximately causing her injuries. Even the say-so lacks specifics as to the precise location, extent, degree, and nature of the defect.  Under these circumstance, summary judgment is inevitable.

3. Notice to the Property Owner.

Even if the evidence of record provided sufficient support to permit a jury to conclude (1) that Plaintiff fell

at the location she now identifies <u>and</u> (2) that there was a

defect in this area, the record is devoid of any evidence of

actual or constructive notice to Defendant of the alleged

defect.  A store owner must have actual or constructive

notice of a dangerous condition for liability to attach:

> [T]he adoption of the mode of operation approach
> will not modify the general rule governing
> premises liability requiring a plaintiff to prove
> that an owner had either actual or constructive
> notice of an unsafe condition on the premises.
> However, if a plaintiff proves that an unsafe
> condition on an owner's premises exists that was
> reasonably foreseeable, resulting from an owner's
> self-service business or mode of operation, and
> the plaintiff slips as a result of the unsafe
> condition, the plaintiff will satisfy the notice
> requirement.

<u>Sheenhan</u>, 448 Mass. at 791.

Plaintiff does not allege that in her case an unsafe

condition resulted from the store's general "mode of

operation" and was thus reasonably foreseeable.  Given this,

Plaintiff must bear the usual burden in a slip-and-fall

case: she must offer sufficient evidence to generate a

genuine issue of fact on the question of notice.

The record evidence, undisputed by Plaintiff, is that a

Target employee responsible for floor conditions walked past

the area fifteen minutes prior to Plaintiff's fall. No

evidence suggests that any person fell in the general area

before or after Plaintiff's fall. No evidence suggests that

anyone reported a problem with the floor after the tiles

were replaced, or at any time prior to Plaintiff's fall.

The only direct evidence about the state of the floor comes

from the inspection report and the deposition of the Target

employee who replaced the tiles. This evidence indicates

that, at least at the time of replacement and inspection,

the floor was in perfectly reasonable condition.

Defendant's evidence of lack of notice would, of

course, not be conclusive or binding upon this court, or

upon a subsequent jury, if there were <u>any</u> contrary evidence

regarding notice on the record. There is none. Given this

failure of proof on an essential element of her case, the

court is obliged to allow Defendant's Motion for Summary

Judgment on this independent ground.

## IV. <u>CONCLUSION</u>

It is impossible not to sympathize with Plaintiff, who

has clearly suffered serious injuries as a result of her

fall on July 2, 2009. Unfortunately, given the lack of

sufficient supporting evidence in two, and possibly three,

essential areas, it would be false charity to pretend that

the case can go forward.  For the foregoing reasons,

Defendant's Motion for Summary Judgment (Dkt. No. 13) is

hereby ALLOWED.  This case may now be closed.

It is So Ordered.


/s/ Michael A. Ponsor
MICHAEL A. PONSOR
U. S. District Judge